## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **U.S. BANK TRUST, N.A., as** | § | |
| **Trustee for LSF9 MASTER** | § | |
| **PARTICIPATION TRUST,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-20-CV-212-PRM** |
| | § | |
| **ELOY SALGADO and** | § | |
| **RAQUEL SALGADO,** | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

On this day, the Court considered Plaintiff U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust's [hereinafter "Plaintiff"] "Motion for Default Judgment" (ECF No. 16), filed on December 9, 2020, in the above-captioned cause. For the reasons herein, the Court will grant in part and deny in part Plaintiff's Motion for Default Judgment.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

The case concerns a mortgage release that Plaintiff alleges was erroneously executed and now seeks to rescind. *See generally* Original Compl., July 21, 2020, ECF No. 1 [hereinafter "Complaint"].

## A.    Factual Background

On or about June 19, 2002, Defendants Eloy and Raquel Salgado [hereinafter "Defendants"] accepted a home-equity mortgage loan from Beneficial Texas Inc. [hereinafter "Beneficial"].  Compl. ¶ 6.

Two documents provide the terms of the mortgage loan.  First, Defendants and Beneficial jointly executed a promissory note, Compl. Ex. 2, at 2 [hereinafter "Note"], on June 19, 2002.  Compl ¶ 6.  Pursuant to the Note, Beneficial agreed to pay Defendants $79,380.70, on June 19, 2002, which Defendants agreed to repay at an interest rate of 11.446% per year.  Note 4.  The Note established a payment schedule, which requires Defendants to make monthly payments of $782.88 to Beneficial over a period of 360 months.  *Id.*  According to this schedule, Defendant's final payment would be due on June 19, 2032, at which point Defendants would have paid Beneficial $281,836.80.  *Id.*

Second, on June 19, 2002, Defendants both signed a document, Compl. Ex. 3 [hereinafter "Security Instrument"], that conveyed to Beneficial a security interest in their home, a piece of real property located at 10436 Byway Drive, El Paso, Texas 79935 [hereinafter

"Property"[1].  Compl. ¶ 7.  The Security Instrument provides that Beneficial—and its successor in interest—has the power to foreclose on the Property should Defendants fail to make the required payments or otherwise default on the mortgage loan.  Security Instrument 6.  The Security Instrument was filed in the official records of El Paso County, Texas on June 5, 2002, under instrument number 20020050603.  *Id.* at 9.

Thereafter, on or about May 15, 2014, HSBC Consumer Lending— a third-party entity acting on behalf of Beneficial— filed a document, Compl. Ex. 4 [hereinafter "Release"], in the official records of El Paso County, Texas on May 20, 2014, under instrument number

---

[1] Plaintiff further describes the Property as follows:

> LOT TEN (10), BLOCK ONE HUNDRED FIFTEEN (115), EASTWOOD HEIGHTS, UNIT 'V', REPLAT 'A', AN ADDITION IN THE CITY OF EL PASO, EL PASO COUNTY, TEXAS, ACCORDING TO THE PLAT THEREOF ON FILE IN VOLUME 33, PAGE 7, PLAT RECORDS IN THE OFFICE OF THE COUNTY CLERK OF EL PASO COUNTY, TEXAS. TAX MAP OR PARCEL ID NO.: E22299911501900.

Compl. ¶ 8.

20140031694.  Compl. ¶ 9.  The Release indicates that Beneficial had received "full payment" in satisfaction of the mortgage loan.  Release 2. In addition, the Release purports to reconvey Beneficial's interest in the Property to Defendants and remove the mortgage lien that encumbered the Property.  *Id.*  Plaintiff avers that the Release was filed "by mistake and without the knowledge of either Plaintiff or Defendants."  Compl. ¶ 9.  Plaintiff further alleges that at the time the Release was filed, "the Note had not been fully paid" and that "[n]o consideration was given, by any party, in return for the Erroneous [sic] Release."  *Id.*

Thereafter, on September 12, 2016, Beneficial assigned its interest in the mortgage to LSF9 Master Participation Trust.  Compl. ¶ 10; *see* Compl. Ex. 5.  This assignment was filed in the official records of El Paso County, Texas under instrument number 20160066724.  Compl. ¶ 10.

Subsequently, on May 14, 2017, LSF9 Master Participation Trust assigned its interest in the mortgage to Plaintiff.  *Id.* ¶ 11; *see* Compl. Ex. 6. This assignment was recorded in the official records of El Paso County, Texas under instrument number 2017023666.  Compl. ¶11.  By

4

virtue of these assignments, Plaintiff avers that it "is the current owner and holder of [the] [l]oan." *Id.*

On April 14, 2020, Plaintiff filed a document, Compl. Ex. 7 [hereinafter "Rescission"], in the official records of El Paso County, Texas under instrument number 20200029327. *Id.* ¶ 12. The Rescission reads that the Security instrument "was erroneously satisfied" and the "[S]ecurity [I]nstrument is reinstated, and . . . is declared to be in full force and effect." Rescission 1.

Plaintiff avers that "Defendants [have] continued making monthly payments on the [l]oan" and remain current on their payments. Compl. ¶¶ 15–16.

## B.   Procedural Background

On July 21, 2020, Plaintiff filed its Complaint. Therein, Plaintiff asserts claims for (1) quantum meruit and (2) equitable rescission of the Release. *Id.* ¶¶ 18–26. Additionally, Plaintiff requests a declaratory judgment stating that the Rescission is valid and the Release is invalid, along with an award of attorney fees and costs. *Id.* ¶¶ 18–29.

On the same day that Plaintiff filed its Complaint, the Clerk of the Court issued summons as to Defendants. *See* Summons in a Civil

5

Action, July 21, 2020, ECF No. 2; Summons in a Civil Action, July 21, 2020, ECF No. 3 [hereinafter collectively "Summons"].  Therein, Defendants were apprised that they were required to answer the Complaint within twenty-one days of receiving service of process and that a failure to respond would result in the entry of a "judgment by default . . . for the relief demanded in the complaint."  Summons 1.

On October 26, 2020, Plaintiff filed affidavits indicating that each Defendants had received service of process.  Aff. of Service, Oct. 26, 2020, ECF No. 8; Aff. of Service, Oct. 26, 2020, ECF No. 9 [hereinafter collectively "Affidavits of Service"].  Therein, Carolina Hernandez, a process server, declares under penalty of perjury that she served both Defendants on October 14, 2020, at the Property.  *Id.*

On December 9, 2020, Plaintiff filed its "Request for Clerk's Entry of Default as to Defendants Eloy Salgado and Raquel Salgado" (ECF No. 16) [hereinafter "Motion for Entry of Default"].  Therein, Plaintiff avers that Defendants were required to "answer or other [sic] respond" to the Complaint by no later than November 9, 2020, pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i).  *Id.* ¶ 2.  Alleging that Defendants had failed to do so, Plaintiff requests that the Clerk of the Court enter Defendants'

default.  *Id.*  Plaintiff attached an affidavit to its Motion for Entry of Default.  *See id.* Ex. 1 [hereinafter "Affidavit"].  Therein, Plaintiff's counsel, Attorney Shawnika L. Harris, declares under penalty of perjury that Defendants had failed to respond within twenty-one days after receiving service of process.  Aff. 1–2   Thereafter, the Clerk of the Court entered Defendants' default. Clerk's Entry of Default as to Defs., ECF No. 19, January 11, 2021.

On December 9, 2020, Plaintiff also filed its Motion for Default Judgment, requesting that the Court enter a default judgment in its favor.  Specifically, Plaintiff requests that the Court (1) cancel and rescind the Release, (2) enter declaratory judgment stating that the Security Instrument and Rescission are valid and in full effect, and (3) award Plaintiff the attorney fees and costs it has incurred in prosecuting this action.  *Id.* at 2–3.

In support of their request for a default judgment, Plaintiff alleges that the Release was erroneously executed.  Compl. ¶ 9.  Specifically, Plaintiff contends Defendants had not fully repaid the loan at the time the Release was executed.  *Id.*  Plaintiff further alleges that the Release

7

"was issued by mistake and without the knowledge of either Plaintiff or Defendants." *Id.*

To date, Defendants have not responded to the Complaint or otherwise entered an appearance in the above-captioned cause.

## II.   LEGAL STANDARDS

### A.   Default Judgment

Rule 55 of the Federal Rules of Civil Procedure governs the procedure by which a party may seek the entry of a party's default and a default judgment.  *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).  If a party "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend" and "that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Once a party's default has been entered, a default judgment may then be requested.  Fed. R. Civ. P. 55(b).  The Fifth Circuit has summarized the process set forth by Rule 55:

> A *default* occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules.  An *entry of default* is what the clerk enters when the default is established by affidavit or otherwise . . . . After [a] defendant's default has been entered, plaintiff may apply for a judgment based on such default. This is a *default judgment.*

*N.Y. Life*, 84 F.3d at 141.

Rule 55(a) provides that the "clerk *must* enter the party's default," provided the default is established by "affidavit or otherwise." (emphasis added).  A court may then enter a default judgment provided that the party requesting a default judgment has stated a cognizable legal claim supported by well-pleaded factual allegations.  *E.g.*, *Lewis*, 236 F.3d at 768; *Wooten v. McDonald Transit Assocs.*, 788 F.3d 490, 498 (5th Cir. 2015); *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

The Fifth Circuit has cautioned that "[d]efault judgments are a drastic remedy, not favored by the Federal Rules [of Civil Procedure]." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam) (quoting *Sun Bank of Ocala v. Pelican Homestead & Savings Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)).  "A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).

Accordingly, a default judgment is appropriate "only in extreme situations," such as when "the adversary process has been halted because of an essentially unresponsive party."  *Sun Bank,* 874 F.2d at 276; *see Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)

(articulating factors relevant to the entry of a default judgment).  This rule reflects the policy that courts should "dispos[e] of cases on their merits," rather than allow parties to terminate litigation by resorting to "procedural maneuver[s]," such as a default judgment.  *Sun Bank*, 874 F.2d at 276.

## III.  ANALYSIS

To resolve Plaintiff's Motion for Default Judgment, the Court must determine:  (1) whether a default judgment is procedurally warranted; (2) whether the Complaint can support a default judgment; and (3) what form of relief, if any, is appropriate.  *See, e.g.*, *United States v. Giles*, 538 F. Supp. 2d 990, 993 (W.D. Tex. 2008) (Martinez, J.); *Moreland v. A-Q-B, LLC*, No. 6-19-CV-00372-ADA, 2019 U.S. Dist. LEXIS 213224, at *3 (W.D. Tex. Dec. 11, 2019).  The Court considers these issues *seriatim*.

### A.    Entry of Default

The Court first considers whether the Clerk's entry of Defendants' default was appropriate.  *N.Y. Life*, 84 F.3d at 141.

Rule 12 of the Federal Rules of Civil Procedure provides that a defendant in a civil action must file a responsive pleading "within

[twenty-one] days after being served with the summons and complaint."
Fed. R. Civ. P. 12(a)(1)(A)(i).  Following a defendant's failure to answer
timely, a plaintiff may request that the clerk of the court enter the
party's default.  *N.Y. Life*, 84 F.3d at 141.  Rule 55 provides that the
grounds for the entry of a party's default must be "shown by affidavit or
otherwise."  Fed. R. Civ. P. 55(a).  "If the plaintiff files a sufficient
application for entry of default" following a defendant's failure to
respond then "the clerk *must* enter the party's default."  *Jefferson v. La.
Dep't of Pub. Safety & Corr.*, 401 F. App'x 927, 929 (5th Cir. 2010)
(quoting *id*.).

Here, Plaintiff filed its Motion for Entry of Default on December 9,
2020.  Therein, Plaintiff avers that Defendants both received service of
process in the above-captioned cause on October 12, 2020, that
Defendants were required to answer or otherwise respond to the
Complaint by November 9, 2020, and that Defendants have failed to do
so.  Mot. for Entry of Default 1.  In support of this motion, Plaintiff filed
its Affidavit, wherein Plaintiff's counsel—Attorney Shawnika L.
Harris—declares under penalty of perjury that the entry of Defendants'
default is warranted for the aforementioned reasons.  Aff. 1–2.  On

11

January 11, 2021, the Clerk of the Court entered Defendants' default. *See* Clerk's Entry of Default as to Defs 1.

After consideration, the Court concludes that the record clearly establishes Defendants "fail[ure] to plead or otherwise defend."  Fed. R. Civ. P. 55(a).  The record reflects that each Defendant received service of process on October 14, 2020.  Affs. Service 4.  Thus, pursuant to Rule 12, Defendants were required to file a responsive pleading by no later than November 14, 2020.  However, Defendants did not respond by November 14, 2020 (or anytime thereafter).  Indeed, the summons warned that a failure to respond timely would result in "judgment by default [being] entered . . . for the relief demanded in the complaint." Summons 1.

Accordingly, the Court concludes that the entry of Defendants' default was warranted.

## B.    Rescission of the Release

The Court next considers whether the Complaint, along with the materials attached to and referenced therein, states a plausible claim for relief and thus can support a default judgment.  *Nishimatsu,* 515 F.2d at 1206.

12

A default judgment may be entered only if the pleadings, which are assumed to be true, provide "a sufficient basis" for a default judgment. *Id.* (citing *Thomson v. Wooster*, 114 U.S. 104, 113 (1885)). To support a default judgment, the pleadings must satisfy the standards set forth in Rule 8 of the Federal Rules of Civil Procedure. *Wooten,* 788 F.3d at 498. Rule 8 provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, pursuant to Rule 8, a claim is sufficiently articulated when it provides the adverse party fair notice of the claim and the grounds upon which it rests such that the adverse party is "not a victim of unfair surprise.'" *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999) (internal quotation omitted).

Accordingly, the Court considers whether the Complaint sufficiently states a claim for equitable rescission of the Release.

As a general matter, a court may not rescind a contract unless a mutual mistake warrants such equitable relief. *Ledig v. Duke Energy Corp.*, 193 S.W.3d 167, 175 (Tex. App. 2006). Nevertheless, in limited circumstances, Texas law allows for equitable rescission of a contract based on a party's unilateral mistake. *Id.*

13

"[E]quity may permit rescission based on a unilateral mistake when '(1) the mistake is of so great a consequence that to enforce the contract would be unconscionable; (2) the mistake relates to a material feature of the contract; (3) the mistake occurred despite ordinary care; and (4) the parties can be placed in status quo, i.e., the rescission must not prejudice the other party except for the loss of the bargain.'" *Id.* (quoting *Cigna Ins. Co. v. Rubalcada*, 960 S.W.2d 408, 412 (Tex. App. 1998); *James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.*, 160 Tex. 617, 620 (1960)).  The Court addresses these issues in turn.

### 1.   Unconscionability

The Court first considers whether enforcing the Release would be unconscionable.  *Id.*

To satisfy this prong, Plaintiff must show that the effect of the Release "is of so great a consequence that to enforce the [Release] as made would be unconscionable."  *Flores v. Medline Indus., Inc.*, No. 13-14-00436-CV, 2015 Tex. App. LEXIS 12719, at *19 (Tex. App. Dec. 17, 2015).  "In general, a contract will be found unconscionable if it is grossly one-sided."  *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008).

Here, Plaintiff contends that "[a]llowing the Erroneous [sic] Release to stand would be unconscionable."  Compl. ¶ 25.  Plaintiff reasons that "[g]iving effect to the Erroneous [sic] Release would create an inequitable windfall to Defendants and an undeserved injury to Plaintiff," *id.* ¶ 19, as Defendants did not bargain for the Release and did not provide any consideration in exchange for the Release, *id.* ¶¶ 24, 26.  The Court is of the opinion that the Release is unconscionable.

Beneficial—Plaintiff's predecessor in interest—and Defendants signed the Note on June 19, 2002.  Note 2.  Pursuant to the Note, Defendants promised to pay Beneficial $281,836.80 over the course of 360 months in exchange for receiving $79,380.70 on June 19, 2002.  *Id.* at 5.  As collateral for this loan, Defendants conveyed to Beneficial a security interest in the Property.  Compl. ¶ 7; Security Instrument 2.  Subsequently, Beneficial's contractual obligations and rights were reassigned to Plaintiff.  Compl. ¶¶ 10–11.

Therefore, the Security Instrument protects Plaintiff's contractual interests by empowering it to foreclose on the Property should Defendants fail to make the required monthly payments.  Compl. ¶ 6; Security Instrument 6.  Even though Plaintiff has not

15

quantified the monetary damage that it would suffer if the Release is not rescinded, the Court is of the opinion that the Release is grossly one-sided and, therefore, unconscionable.

Plaintiff alleges that Defendants have made timely payments as required under the terms of the Mortgage. Compl. ¶ 16. As of May 14, 2014, Defendants would have paid approximately $111,951.89 of the mortgage loan, with a balance of approximately $169,885.00 left owing. At this time, Plaintiff would have received approximately 40%—less than half—of the total sum that it was entitled to pursuant to the Note. However, if the Release is deemed effective as of May 14, 2014, Defendants would be released from their promise to pay the remaining balance of approximately $169,885.00, a windfall that would come at Plaintiff's expense.

As Defendants did not provide Plaintiff any consideration in exchange for this windfall, the Court concludes that the Release is unconscionable.

2. <u>Materiality</u>

The Court next considers whether Plaintiff's mistake relates to a material feature of the contract. *Ledig*, 193 S.W.3d at 175.

To be "material," Plaintiff's mistake "must involve the subject matter of the contract and the substance thereof." *Flores,* 2015 Tex. App. LEXIS 12719, at *12.  A mistake is not material when it merely relates "to a collateral matter." *Id.*

Here, the two documents define the mortgage contract between Plaintiff and Defendants.  First, the Note memorializes Plaintiff's promise to lend Defendants $79,380.70 and Defendants' corresponding promise to pay Plaintiff a total of $281,836.00 over the course of 360 months.  Second, the Security Instrument conveyed to Plaintiff a security interest in the Property to serve as collateral for the mortgage. Hence, the Court concludes that the essential elements of the contract include:  (1) the mortgage loan from Plaintiff to Defendants, (2) the promise to pay Plaintiff a total of $281,836.00 over the course of 360 months, and (3) the security interest in the Property.

The Release concerns two of these issues:  (1) Defendants' promise to repay the mortgage loan and (2) Plaintiff's security interest in the Property.  Release 2.

Accordingly, the Court concludes that the Release relates to material elements of the contract.

17

### 3.   Ordinary Care

The Court next considers whether Plaintiff's mistake occurred despite the use of ordinary care. *Ledig*, 193 S.W.3d at 175.

In the context of equitable rescission, a mistake occurs despite the use of ordinary care when the party's mistake results from a "carelessness or lack of good faith" that "amounts to gross . . . or wilful negligence." *James T. Taylor & Son*, 160 Tex. at 622 (internal quotation omitted).  "[A] clerical or inadvertent error" will not preclude equitable relief; the mistake must "violate a positive duty." *Id.*  This is a question of fact that must be answered in light of the circumstances at that time of the mistake.  *Id.* at 622–25  The relevant factors include, *inter alia,* "the nature of the transaction, any external pressures that might have led to the mistake, and "the position of the opposite contracting party." *Id.*

In the present case, Plaintiff does not explain why the Release was erroneously executed.[2]  Instead, Plaintiff avers the following:

_____

[2] Plaintiff alleges that "[t]he mistake occurred despite ordinary care. Beneficial Financial was winding down their business at the time the mistake was made."  Compl. ¶ 25(b).  It is well-settled

> At the time of the Erroneous [sic] Release, the Note had not been
> fully paid and the lien created by the Security Instrument,
> securing the Note, had not been satisfied.  No consideration was
> given, by any party, in return for the erroneous Release. The
> Erroneous [sic] Release was issued by mistake and without the
> knowledge of either Plaintiff or Defendants.

Compl. ¶ 9.

Based on the record before it, the Court is unable to glean why the mistake occurred, what effect, if any, it had on Defendants, or why no one realized this mistake had occurred until April 14, 2020—nearly six years after the Release was recorded.  Given the sparse details regarding this issue,  the Court is unable to find that the Release was filed despite the use of ordinary care.

Nevertheless, Texas law has recognized an exception to the 'ordinary care' prong.  *Hayes v. E.T.S. Enters., Inc.*, 809 S.W.2d 652, 659 (Tex. App. 1991).  In limited circumstances, the balance of the equities may warrant rescission based on a unilateral mistake, even though the

---

that pleadings cannot rely on conclusory allegations to satisfy Rule 8.  *See Wooten*, 788 F.3d at 498 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  As this particular allegation is bereft of factual support, the Court concludes that it is a conclusory statement that it does not accept as true.

culpable party cannot establish that their mistake occurred despite the use of ordinary care. *E.g.*, *id.*; *Star Serv. v. Raines (In re Raines)*, No. 95-40255, 1995 U.S. App. LEXIS 41698, at *10 (5th Cir. 1995) (unpublished op.).

Under this exception, a party that made a unilateral mistake may request equitable rescission of a contract "unless (1) the cancellation would offend the rights of an innocent purchaser for value or (2) another party in good faith and in innocent reliance . . . had made a position alteration that could not be reversed without significant prejudice." *Hayes*, 809 S.W.2d at 659. Stated otherwise, the inability to satisfy the 'ordinary care' prong is no barrier to rescission when rescission can restore both parties to the status quo ex-ante without prejudice to either side. *See Monarch Marking Sys. Co. v. Reed's Photo Mart, Inc.*, 485 S.W.2d 905, 906-07 (Tex. 1972) ("The Texas rule has long been that relief from a unilateral mistake depends upon the ability of the party mistaken to put the other party into the same situation as he was prior to the transaction in question.")

This exception has been justified as a matter of public policy. *See Hayes,* 809 S.W.2d at 659 (discussing *James T. Taylor & Son*, 160 Tex.

at 622–26).  When a party commits a mistake that, if unrectified, would produce an unconscionable outcome, then equity may excuse the culpable party from showing that they exercised ordinary care based on the principle that it would be improper for the non-culpable party to receive an unexpected windfall because of an unintended mistake.  *See id.* (internal quotation omitted).  Thus, in *Hayes*, the court rescinded a contractual release that was erroneously filed, even though the culpable party could not satisfy the ordinary care prong, reasoning that it would be improper for the release to be given effect when the non-culpable party had not made a "detrimental position change in innocent reliance upon the . . . release" and the culpable party would have suffered a significant loss absent equitable relief.  *Id.*

Here, the Court is of the opinion that the equities weigh in favor of rescission.  The record reflects that Beneficial and Defendants entered into a valid mortgage contract, whereby Defendants received a sum of money in exchange for the promise to repay the loan plus applicable interest.  Compl. ¶¶ 6–8.  Nothing before the Court suggests that rescinding the Release would deny Defendants the contractual benefits for which they had bargained.  On the contrary, Plaintiff alleges that it

21

has "performed each and all of its contractual obligations." *Id.* ¶ 23. Moreover, there is no indication that rescission would prejudice Defendants. Plaintiff expressly alleges that Defendants "were not aware of" the Release until 2020 and have consistently made their monthly mortgage payments. *Id.* ¶ 25(c). On this record, the Court concludes that Defendants have not altered their position in reliance on the Release such that equitable rescission would be improper. *Hayes*, 809 S.W.2d at 659.

In contrast, giving effect to the Release would result in significant damage to Plaintiff—it would excuse Defendants from their obligation to pay approximately $169,885.00 to Plaintiff. Indeed, enforcing the Release would be inequitable in light of the fact that a third-party entity, HSBC Consumer Lending—and not Plaintiff—erroneously filed the Release. Compl. ¶ 9; Release 2; *see Hayes*, 809 S.W.2d at 660 (reasoning that equitable rescission was warranted because "the negligence, if any, in preparing and executing the release was that of a third party and not that of [the plaintiff].").

22

Consequently, the Court concludes that the balance of the equities warrants rescinding the Release and giving effect to the Rescission.[3]

## C.   Quantum Meruit

As an alternative theory of recovery, Plaintiff also asserts a claim for quantum meruit.  Compl. ¶ 18–21.

A quantum meruit claim seeks to prevent the unjust enrichment of one party at the expense of another.  *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683 (Tex. 2000).  Thus, a party bringing a quantum meruit claim seeks "an obligation imposed by law to do justice even though it was clear that no promise was ever made or intended."  *Id.* (quoting John D. Calamari & Joseph M. Perillo, *The Law of Contracts*, § 1–12 (3d ed. 1987)).  However, it is well-settled that a party cannot bring a claim for quantum meruit "when a valid, express contract covers

---

[3] As the Court finds that Defendants have not altered their position in reliance on the Release, it need not separately consider the fourth prong of the rescission test—that "the parties can be placed in status quo, i.e., the rescission must not prejudice the other party except for the loss of the bargain." *Ledig*, 193 S.W.3d at 175.  For the reasons set forth above, the Court concludes that the rescission would place both Plaintiff and Defendants in the status-quo without issue.

23

the subject matter of the parties' dispute." *Id*.; *see Ledig*, 193 S.W.3d at 176 ("When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement.").

Here, the Note and Security Instrument constitute a valid contract that expressly covers the subject matter of this dispute. *See infra,* Part III.B.2. For this reason, the Court concludes that the existence of a valid mortgage contract precludes Plaintiff's quantum meruit claim, Defendants' default notwithstanding.

## D.   Relief

The Court next considers what relief Plaintiff merits.

### 1.   *Lindsey*[4] Factors

The Court now considers whether a default judgment is appropriate in this case, or whether any practical considerations weigh against the entry of a default judgment.

The Fifth Circuit has described a default judgment as "a drastic remedy" that is not favored by the Federal Rules of Civil Procedure.

---

[4] *Lindsey v. Prive Corp.*, 161 F.3d 886 (5th Cir. 1998).

*Lindsey*, 161 F.3d at 893 (quoting *Sun Bank v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)).  A default judgment is appropriate "only in extreme situations."  *Id.*

Before entering a default judgment, the Court must consider "whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion."  *Id.*; *see also Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) ("To determine whether . . .  to set aside a default . . .  we . . .  consider three factors . . .  [:] whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.") (cleaned up).

In the present case, the *Lindsey* factors support Plaintiff's request for a default judgment.  Defendants' default is clearly established.  *See infra*, Part III.A.  The Court deems Defendants' default as an admission of Plaintiff's factual allegations.  *See Nishimatsu Const. Co., Ltd. v.*

*Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (A defendant, "by his default, admits the plaintiff's well-pleaded allegations of fact.").

Relatedly, nothing in the current record suggests that Defendants' default was the result of a good faith mistake, as Defendants have not entered an appearance even as of the date of this Order.[5]  This is a quintessential example of a case when "the adversary process has been halted because of an essentially unresponsive party." *Sun Bank,* 874 F.2d at 276; *cf. United States v. One Parcel of Real Prop.*, 763 F.2d 181, 183 (5th Cir. 1985) (holding that a default is not willful where the defendant files an untimely response).  Consequently, the Court determines that Defendants' default is willful.

Moreover, rescission would not prejudice Defendants. There is no indication that Defendants have altered their position in reliance on the Release.  *See supra,* Part III.B.3.  Additionally, nothing in the present record suggests that Defendants possess a "meritorious defense" that

---

[5] Plaintiff alleges that it "has conferred with Defendants regarding the pendency of this lawsuit and has made attempts to settle this matter by other means; however, Defendants have ceased communicating with Plaintiff."  Mot. for Default J. 2.

could be asserted but for their default.  *Cf. One Parcel of Real Prop.,* 763 F.2d at 184 (considering the defaulting party's defense as a reason for setting aside a default judgment).

For these reasons, the Court determines that a default judgment is appropriate in this case.

## 2.   Attorney Fees

Finally, Plaintiff requests an award of attorney fees and costs. Compl. 6; Resp. 3.

Attorney fees are recoverable when provided for by statute or by a contract between the parties.  *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006).  Here, Plaintiff argues that an award of attorney fees and costs is authorized pursuant to § 37.009 of the Texas Civil Practice and Remedies Code.  Compl. ¶ 29.

Section 37.009 provides that a court "may award costs and reasonable and necessary attorney[] fees as are equitable and just" in an action for a declaratory judgment.  Tex. Civ. Prac. & Rem. Code § 37.009 (2019).  The decision to award attorney fees is discretionary and turns on what the reviewing court determines is "equitable and just." *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 603 (5th

Cir. 2000) (quoting *Unified Loans v. Pettijohn*, 955 S.W.2d 649, 654
(Tex. App. 1997); *accord Barshop v. Medina County Underground
Conservation Dist.,* 925 S.W.2d 618, 637–38 (Tex. 1996).

In the present case, the Court is of the opinion that the equities
weigh against Plaintiff's request for attorney fees.  There is no
allegation that Defendants have failed to fulfill their promises under
the Note and the Security Instrument.  Indeed,  Plaintiff concedes that
Defendants have consistently made timely payments, even though the
Release, by its express terms, excused them from this obligation.
Compl. ¶¶ 15–16.  Moreover, Plaintiff concedes that Defendants were
not responsible for the Release being recorded; the mistake was caused
by a third party that worked for Beneficial, Plaintiff's predecessor in
interest.  *Id.* ¶ 25.  It follows that Defendants should not be forced to
bear the costs of correcting this mistake.

Accordingly, the Court denies Plaintiff's request for attorney fees
and costs.

## IV.   CONCLUSION

For the aforementioned reasons, the Court concludes that the
Clerk of the Court properly entered the default of Defendants Eloy

Salgado and Raquel Salgado, and that Plaintiff is entitled to equitable rescission of the Release, along with declaratory judgment to that effect. In addition, the Court concludes that Plaintiff is not entitled to recover attorney fees.

Accordingly, **IT IS ORDERED** that Plaintiff U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust Motion for Default Judgment (ECF No. 16) is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that **DEFAULT JUDGMENT** is hereby **ENTERED IN FAVOR** of Plaintiff U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust, and **AGAINST** Defendant Eloy Salgado and Defendant Raquel Salgado pursuant to Federal Rule of Civil Procedure 55(b)(2).

**IT IS FURTHER ORDERED** that Plaintiff U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust requests for attorney fees and costs is **DENIED**.

**IT IS FURTHER ORDERED** that the document that was filed in the Official Records of El Paso County, Texas on May 20, 2014, under Instrument Number 20140031694 is **NULL AND VOID**.

**IT IS FURTHER ORDERED** that the document that was filed in the Official Records of El Paso County, Texas on April 14, 2020, under Instrument Number 20200029327 is **VALID AND IN FULL EFFECT.**

**IT IS FURTHER ORDERED** that all settings in this matter are **VACATED.**

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED AS MOOT.**

**IT IS FINALLY ORDERED** that the **CLERK** shall **CLOSE** this matter.

SIGNED this _____ day of February, 2021.

_____
PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE

30